SUPREME COURT. Monroe General Term, March, 1862. *Johnson, Welles* and *Campbell*, Justices.

## THE PEOPLE *v.* EDWARD KENYON.

Form of an indictment for seduction under a promise of marriage.

Charge of the court to a jury on a trial for seduction, containing a statement of the different questions of fact to be decided, and of the rules of law by which they were to be governed.

The words, " previous chaste character," as used in the " act to punish seduction as a crime," mean " actual personal virtue."

On the trial of an indictment under that statute, it is not competent for the defendant to prove what was the previous reputation of the prosecutrix for chastity; but the question is, was she, in fact, a woman of chastity before the alleged offense. It is only by proving specific acts that her previous character can be assailed.

Nor is it competent on the trial of such an indictment, to prove by general reputation that the house of the mother of the prosecutrix, where the prosecutrix lived, was a house of ill-fame. If such a fact is proper to be proved, it should be established, not by hearsay, but by positive testimony.

To convict under this statute, which subjects to punishment " any *man* who shall, under promise of marriage, seduce," &c., it is not necessary to prove on the trial that the defendant is twenty-one years of age. If he is old enough to be the father of the child begotten by him, he is sufficiently within the description of the statute to be amenable to punishment for the offense.

The statute, in providing that no conviction shall be had on the testimony of the female seduced, unsupported by other evidence, does not require the testimony of an additional witness. The corroborating evidence may be supplied by the facts and circumstances surrounding the transaction and otherwise established in the case.

Where the prosecutrix testified that she was unmarried, and it appeared that she was sixteen years of age at the time of the alleged offense, and living with her mother, the fact that she was unmarried was held to be, *prima facie,* sufficiently established within the requirement of the statute.

Where a seduction is accomplished by means of a promise of marriage on the part of the seducer, a consent of the female to marry the seducer, amounting to a mutual promise on her part to marry, is implied.

Where it was proved on the trial that the defendant was a frequent visitor at the house of the mother of the female seduced, that he waited on her to balls and parties, and took her out frequently to ride, and when her mother spoke to him about his keeping company with her daughter, said his motives were good, it was held that such facts were proper evidence for the consideration of the jury, in corroboration of her testimony, to prove that he had made to her a promise of marriage.

The testimony of the female, as to the illicit connection with the defendant, is corroborated by evidence that she was delivered of a child, of the abundant opportunity afforded for the defendant to become the father of it, and of the external evidences of the intimacy existing between the parties.

The statute does not require that the testimony of the female shall be corroborated in every particular. It is only necessary that it should be supported in the main features of the case.

THE defendant was indicted for seduction under a promise of marriage. The following is a copy of the indictment:

*State of New York, Yates county, ss:*

The jurors of the People of the State of New York, and for the body of the county of Yates aforesaid, upon their oath do present that Edward Kenyon, late of the town of Jerusalem, in the county of Yates aforesaid, heretofore, to wit, on the second day of May, in the year of our Lord one thousand eight hundred and sixty, at the town of Jerusalem, in the county of Yates aforesaid, unlawfully, willfully and feloniously, under and by means of promise of marriage, did seduce and have illicit sexual intercourse and connection with one Mary Chissom, he, the said Edgar Kenyon, being then and there a man, and the said Mary Chissom then and there being an unmarried female of previous chaste character, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York, their laws and dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present, that heretofore, to wit, on the twentieth day of March, in the year of our Lord one thousand eight hundred and sixty, at the town of Jerusalem, in the county of Yates aforesaid, the said Edgar Kenyon undertook and promised to and with one Mary Chissom, who was then and there an unmarried female of marriageable age and condition, to marry her, the said Mary Chissom, whenever he, the said Edgar Kenyon, should be thereunto afterwards requested, and mutual promises of marriage were then and there made by and between the said Edgar Kenyon and the said Mary Chissom.

And the jurors aforesaid, upon their oath aforesaid, do further say, that after the making of the said promise of marriage

by the said Edgar Kenyon, to wit, on the second day of May, in the year of our Lord one thousand eight hundred and sixty, at the town and in the county aforesaid, he, the said Edgar Kenyon, did, under and by means of his said promise of marriage, willfully and feloniously seduce and have illicit connection with the said Mary Chissom, he, the said Edgar Kenyon, at the time aforesaid of the making of the promise of marriage aforesaid, and also at the time last aforesaid of the seduction and illicit connection aforesaid, at the town and in the county aforesaid, being a man, and she, the said Mary Chissom, at the time aforesaid of the making the promise of marriage aforesaid, and also at the time aforesaid of the seduction and illicit connection aforesaid, at the town and in the county aforesaid; being an unmarried female of previous chaste character, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York, their laws and dignity.

And the jurors aforesaid, upon their oaths aforesaid, do further present that heretofore, to wit, on the twentieth day of March, in the year of our Lord one thousand eight hundred and sixty, at the town of Jerusalem, in the said county of Yates, the said Edgar Kenyon undertook to and promised to and with one Mary Chissom, who was then and there an unmarried female of marriageable age and condition, to marry her, the said Mary Chissom, and mutual promises of marriage were then and there made and entered into by and between the said Edgar and Mary.

And the jurors aforesaid, upon their oath, do further say: That after the making the said promise of marriage by the said Edgar Kenyon, he, the said Edgar Kenyon, under and by means of his said promise of marriage, willfully and feloniously did seduce and have illicit connection with the said Mary Chissom, she being then and there an unmarried female of previous chaste character, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York, their laws and dignity.

H. M. STEWART, *District Attorney.*

The People *v.* Kenyon.

The prisoner, by his counsel, moved to quash the indictment on the following grounds, among others, appearing therein:

I. (1.) That the first count is bad, because it does not allege that the prisoner was unmarried or otherwise capable of entering into the marriage contract at the time of making the promise of marriage and of having the illicit intercourse, or that Mary Chissom was. (2.) The first count is also bad, because the promise of marriage is not alleged to be mutual.

II. The second count of the indictment is bad, because it does not show or allege that the prisoner was unmarried or otherwise capable of entering into the contract of marriage at the time of making the promise and having the illicit connection, or that Mary Chissom was.

III. That the third count is bad, because it does not allege the prisoner is a man, or that he was legally capable of making or entering into a contract of marriage.

This motion was overruled by the court, to which decision the prisoner's counsel excepted.

The trial of the indictment took place before WILLIAM S. BRIGGS, county judge, and the Justices of the Sessions, at a Court of Sessions for Yates county, held in November, 1861.

The district attorney, on the part of the people, called as a witness the prosecutrix,

*Mary Chissom*, who, being duly sworn, testified as follows: My name is Mary Chissom; I know the defendant; I first became acquainted with him three years ago last spring; I resided at Kinney's Corners; he resided on Bluff Point, four miles from my residence; he visited me and paid attentions to me as a suitor after he became acquainted with me; it was in the spring he first came to visit me; his visits continued about a year steady; at that time he discontinued them; he visited me about every two weeks during the first year; during that time he accompanied me to parties, excursions, &c., quite often.

*Q.* During that time did you receive visits from any other persons?

This question was objected to by defendant's counsel on the grounds, 1st. That it is irrelevant and immaterial; 2d. That it tends to prejudice the defendant before the minds of the jury. The court overruled the objection, and the counsel for the defendant excepted.

*A.* I did not; during that time Mr. Kenyon did not at any time state what his object was in visiting me; he has visited me since that time; he discontinued his visits at that time for the term of one winter; they were discontinued along in the fall; they were discontinued until July following; he recommenced his visits in the summer, in July; his visits continued then until along in the winter; I don't know exactly what time they were discontinued; there have been visits since that; they commenced in May and continued until November, a year ago this November; he has not visited me since that; he has spoken to me during these visits upon the subject of marriage; he first spoke to me in the summer; a year ago this last summer; I don't recollect the month; it was in the spring, I think, that he first spoke to me upon the subject of marriage; I don't know what month it was.

*Q.* What did the defendant say to you in regard to marriage?

This question was objected to by the counsel for the defendant, on the grounds, 1st. That time is material; 2d. That the time of making the promise and having the illicit connection, as alleged in the indictment, was the 2d day of May, 1860, and the People must prove the same as alleged in the indictment. The court overruled the objection and admitted the evidence, to which decision the counsel for the defendant excepted.

*A.* The substance of the conversation was, he said he and I would be married in the fall; he said if I would do so and so, he would marry me; that is the way he spoke; those were the words he used; I don't remember what else he said; when he said this he was by me, by my side; I don't know where his arms were; he said something to me in connection with having sexual intercourse with me; he said if I would do so

and so, he would marry me; that is what I mean by what he said upon the subject of his having sexual intercourse with me; I told him no, sir; he urged me; he said nobody would know it, and he would have me; there was nothing further said then; he had sexual intercourse with me after this conversation; I consented after he had stated that; he said he would marry me last fall; I didn't say anything about it then; this visit was at home, at my mother's house; it was in the evening; I don't know what month or day of the month it was; it was in the spring; the next time he visited me was the next week, at my mother's house; I don't remember whether there was anything said upon the subject of marriage or not, at that time; these same acts were not committed by him at that time; they were committed after that; after this first time that I mentioned, he visited me once or twice a week during the spring and summer; there was something said upon the subject of marriage after that; it was in June or July, I don't know which; at the time of the first conversation, I don't remember whether there was anything said by me as to my being willing to marry him; he said he would have me.

*Q.* When did the sexual intercourse take place?

This question was objected to by the counsel for the defendant on the grounds, 1st. That no sufficient grounds have been shown to warrant the inquiry; 2d. That it being alleged in the indictment to have been on the 2d day of May, 1860, it is necessary for the prosecution to prove it as alleged — time being material; 3d. That there has been no legal promise or contract of marriage proven between the parties, and the evidence is irrelevant and immaterial. The court overruled the objection and admitted the evidence, to which decision of the court the counsel for the defendant excepted.

*A.* This sexual intercourse was after this conversation between us upon the subject of marriage.

*Q.* What influence did this promise of his to marry you have upon your mind by way of inducing you to consent to have sexual intercourse with him?

This question was objected to by the counsel for the defendant, on the grounds, 1st. That it is improper; 2d. That it was a question that belonged exclusively to the province of the jury. The court overruled the objection and admitted the evidence, and the counsel for the defendant excepted.

*A.* I thought he was going to have me, and nobody would know it. That sexual intercourse continued from time to time afterwards. I am the mother of a child. It was born the 30th day of January last.

*Q.* Who was its father?

This question was objected to by the counsel for defendant, on the grounds, 1st. That it is improper; 2d. That it is only alleged in the indictment that intercourse took place, and whether there was fruit from the act we are not here to litigate; 3d. That it is irrelevant. The court overruled the objection and admitted the evidence, to which decision the counsel for defendant excepted.

*A.* Edgar Kenyon, the defendant.

*Q.* State whether or not you have had sexual intercourse with any other person except Edgar Kenyon, the defendant.

This question was objected to as leading and incompetent. The court overruled the objection, to which decision the counsel for the defendant excepted.

*A.* I never did. I have never been married. I have never received the addresses of any other person as a suitor, except the defendant; no other person has ever visited me as a suitor since this first conversation in the spring upon the subject of marriage. I have resided at my mother's; I had resided at my mother's during two or three years previous; my mother is present; it is this lady; her name is Eliza Chissom; I have no father living. When Edgar Kenyon commenced visiting me first, I was at home; I was sixteen years old then; I am now eighteen. I don't recollect how long he stayed with me the first time; he came in the afternoon about 4, and stayed until dark—till in the evening some time; I was with him alone; I was with him all the time in the front room alone. My mother and sister were about the house at that time. He

The People *v.* Kenyon.

came the next Friday about 3 o'clock in the afternoon; this was in the spring; he went away before night. I was in the house with him; I was alone with him; I don't know how long; there was nothing said about marriage then. I don't remember whether he made any appointment about coming again. He came the next week; I was alone. He visited me once in two weeks; I was not alone with him every time. I don't know how often I rode out with him; it was more than twice; it was five or six times; nobody was with us in the carriage; it was a covered buggy; we rode to Branchport. He broke off his visits in the fall — towards winter. He commenced again the next July; I was then at home; I was alone with him in the evening till after 9 o'clock; I don't know whether it was midnight or not; he went away that night.

*Q.* Did he come to visit you after that?

This question was objected to by the counsel for defendant on the grounds, 1st. That it is immaterial and irrelevant; 2d. That it was now incompetent, and intended to prejudice the minds of the jury. The court overruled the objection and admitted the evidence, and the counsel for the defendant excepted.

*A.* He came again next week, and stayed till about 11 o'clock. I was with him in that same front room; I was not alone with him every time he visited me that summer. He did not say what business he had with me in these visits; he did not say before he broke off what his object was; his visits continued until winter, some time. I was alone with him frequently till late at night. I rode out with him that season, quite a number of times; I rode in the evening with him. He kept me company frequently; we stopped at my sister's about three times; I continued out riding with him until nightfall; I don't know how late it was when we got back; I think it was 9 o'clock.

After the witness had been cross-examined at great length, the counsel for the People proceeded to a re-direct examination.

*Question by district attorney:* When did you first inform Edgar of your situation?

This question was objected to by the counsel for the defendant, on the grounds, 1st. That it was immaterial and irrelevant; 2d. And the People had exhausted their proof. The court overruled the objection and admitted the evidence; to which decision the counsel for the defendant excepted.

A. In July.

Q. What occurred between you at that time in substance?

This question was objected to by the counsel for the defendant, on the same grounds as the previous question. The court overruled the objection and admitted the evidence; to which decision of the court the counsel for the defendant excepted.

A. I told him that I was in such a situation, and wanted him to marry me. He kept putting me off all the time.

Q. What was his reply?

This question was objected to upon the same grounds as the previous questions, by the defendant's counsel. The court overruled the objection and admitted the evidence; to which decision the counsel for the defendant excepted.

A. He wanted me to wait; he was not ready then, he said. We had a conversation afterwards upon that subject; it was the next week.

Q. What was then said between you?

This question was objected to by the defendant, upon the same grounds as the previous question. The court overruled the objection and admitted the evidence; to which decision the counsel for the defendant excepted.

A. The same thing was said in substance; we had a conversation after that. (The following testimony was taken under the same ruling by the court and exceptions by the defendant.) I don't recollect how long after that, not a great while; it was that summer. I urged him to marry me; he said he was not ready; he wanted me to wait. He said he would be ready in the fall; he did not say anything further then. I don't remember whether I spoke to him or he to me in the next conversation upon the subject; he said something upon the subject of his going away. I don't know whether this was in September or October. He said he was going

The People *v.* Kenyon.

away to be gone three weeks, then we would be married and go west; this was in November. I saw him two nights before he went away. I don't know the time exactly; it was in November that he went. He then said the same that he had before, that he would be back again in three weeks and then we would be married and go west. He said he was going to Rhode Island to see his uncle; was going on a visit. He did leave in November some time, and was gone until July, I think, of this year. During that time, up to this last July, I have not seen him nor heard from him.

*Q.* Did he at any time after you first told him of your situation, say anything to you as to whether you should tell your mother of your situation?

This question was objected to by the defendant, on the ground that it was, 1st. Leading; 2d. Immaterial and irrelevant; 3d. That the People had exhausted their proof in regard to the matter. The court overruled the objections and admitted the evidence; to which decision the counsel for the defendant excepted.

*A.* He told me not to tell her, and repeated it afterwards. He gave no reason for this, after the first time when there was intercourse between us, when he urged me it was to do as he wanted me to.

Mrs. Eliza Chissom, the mother of the prosecutrix, and several other witnesses, were then examined in behalf of the People.

The evidence was then closed on the part of the People, and the defendant's counsel moved the court that the defendant be discharged, and that the court should direct the jury to find a verdict of "not guilty," or "acquittal," upon the following grounds:

1st. Upon the same grounds upon which the motion to quash the indictment was made.

2d. That the People had failed to make out a case under the provisions of the statute.

3d. That time was material in a case of this character, and

the People had failed to prove the offense to have been committed at the time alleged in the indictment.

4th. That it was necessary for the People to support and corroborate the prosecutrix and witness, Mary Chissom, in regard to all the material facts necessary to be proved to make out the offense under the statute.

5th. That the People had failed to support and corroborate the witness and prosecutrix, Mary Chissom. (1.) In regard to the promise of marriage. (2.) That she was an unmarried female at the time of the alleged offense. (3.) That she was an unmarried female of previous chaste character at the time of the alleged offense. (4.) That the defendant seduced and had illicit connection with her under promise of marriage. (5.) That the defendant seduced the said Mary Chissom. (6.) That no legal promise of marriage had been proven in the case. (7.) That the People had failed to prove that defendant was a man within the intention and meaning of the statute. (8.) The promise proved in this case, if there is any, is a conditional one. The promise alleged in the indictment is absolute, and hence there is a variance.

No conviction can be had under the second count, because the promise therein alleged is, that he would marry when requested, and there is no proof of such a promise.

The court denied the motion, and the counsel for the defendant excepted.

Several witnesses were examined on the part of the defense. During their examination the counsel for the defendant offered to prove that the witness and prosecutrix, Mary Chissom's, character for chastity was, by general reputation among her neighbors, bad, which offer was objected to by the district attorney, upon the ground that the evidence is incompetent, and that the defendant, if he wishes to attack the character of Mary for chastity, must do so by specific acts, and that it cannot be shown by general reputation. The court sustained the objection. To which decision of the court the counsel for the defendant excepted.

The defendant also offered to prove that, from general repu-

tation among the neighbors in the neighborhood where the witness, Eliza Chissom, resided and kept house, and with whom the witness, Mary Chissom, lived, the house kept by the said Eliza Chissom was a house of ill fame.

The district attorney, on behalf of the People, objected to such offer and the reception of the evidence, upon the ground that the same is improper and incompetent.

The court sustained the objection, and refused to receive the evidence. To which decision of the court the counsel for the defendant excepted.

After the evidence on both sides was closed, the counsel for the defendant again asked that the defendant be discharged, and that the jury be directed to find a verdict of " not guilty," on the same grounds as stated on the previous motion. The court denied the motion, and the defendant excepted.

After the counsel on both sides had addressed the jury, the presiding judge charged as follows:

GENTLEMEN OF THE JURY: The statute upon which this indictment is based is one rather peculiar in its provisions, and (as has been stated) up to the time of its passage there was no statute law, whatever, punishing seduction.

Nor was seduction a crime at common law; but the legislature has deemed the subject of sufficient importance to enact such a law. It is the law of the land, and you are to administer this law as you find it. If a clear case of guilt has been established, then your duty is plain.

There are several leading principles to which we propose to call your attention, without reciting the proofs, for these are as fresh—and probably more so—in your minds than our own. We merely intend to call your attention to such points, and to such proofs under such points, as will aid you in arriving at a just conclusion.

The first point to be shown on the part of the People is this: Was the prosecutrix an unmarried female? There was no testimony, except that of Mary Chissom herself, upon that point. She testifies that she was an unmarried female.

The next proposition in order is this : Was there a promise of marriage ? Because, unless there was a promise of marriage on the part of the defendant, then, although the evidence of the seduction of the prosecutrix be clear, this of itself would not constitute an offense against the statute. The promise of marriage is a condition precedent, and must be proved. Unless the People, therefore, have made out a sufficient promise of marriage, then there can be no conviction. For, although it be conceded that this prosecutrix was seduced, as claimed, yet, if such seduction was not accomplished under a promise of marriage, then it it is not an offense under the statute.

The first laboring point in the case will be this : Was there a promise of marriage ? Upon the question of the mutuality of this promise, the authorities are somewhat in conflict. By some, it has been held that it should be mutual, *i. e.*, a valid promise; while, on the other hand, it has been held that whether the promise is binding at law or not, if the prosecutrix believed it, and it was the consideration for, or the inducement to, the illicit intercourse, the promise is sufficient.

Now, in respect to this question, we prefer to charge you in the language we have written out : If you shall be fully satisfied from the evidence that the defendant promised to marry the prosecutrix if she would have carnal connection with him, and she, believing and confiding in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute. The evidence upon this point is that of the prosecutrix. She testifies in respect to it. I might refer to her testimony ; but, as counsel have commented fully and at length upon her evidence touching this promise and its terms, it it will be unnecessary for me to do so. If you find from her evidence that it complies with the definition we have given you — in other words, if the defendant promised to marry her if she would submit to have carnal and illicit intercourse with him, and she, believing such promise to have been made in good faith, and on her part intending to accept such offer of marriage, and then yielded — we say that such a promise is

sufficient to bring the prosecutrix within the protection of the statute.

But, in respect to this, as well as to every other point, you should be fully satisfied. You should be satisfied beyond all reasonable doubt that there was such a promise made. If you come to the conclusion from the whole evidence, beyond reasonable doubt, *i. e.*, if you have no reasonable doubt that there was such a promise made, the next point to be taken into consideration will be, did he have sexual connection with her? In other words, did he seduce and have illicit connection with the prosecutrix? Now she is the only person who has testified upon that point directly — the only one who has given direct evidence upon that point. If she has testified truly upon that point, there was a sexual connection as stated. But whether she has stated truly, or stated it as it was, we do not undertake to say, but submit it to you for your consideration and determination.

The question of seduction is one of the leading questions in this case. Because, as we before remarked, even though there was a promise of marriage, and yet he did not seduce her, then no offense has been committed. But even if these two propositions are found in the affirmative, still there can be no conviction, unless the prosecutrix is supported by other evidence. Because the statute goes farther, and provides that no conviction can be had upon the unsupported evidence of the female, hence the prosecutrix must be supported. Has she been supported by evidence in respect to a promise of marriage?

The evidence relied upon by the People upon this point is that of her mother, who appears as a witness and testifies that the prosecutrix lived with her at and during the time the defendant called upon Mary. She testifies to you the frequency of these visits and their duration, that he called sometimes in the day time, and more frequently in the evening, and that he stayed during the evening; and she stated to you the length of time that he remained there, and the length of time over which the calls extended. This is all proper evidence, as

bearing upon the promise of marriage, and it is submitted to you, and you are to say whether you infer from this evidence of the mother that such a promise of marriage was made.

Formerly, in civil cases, in actions for a breach of promise, it was not necessary to prove positively and directly, an absolute promise of marriage. It was sufficient if the circumstances given in evidence were such that the jury might infer a promise of marriage, and we say to you now that this is competent evidence, as bearing upon this question. Does it impress your minds to that extent that you can infer a promise of marriage? If so, it corroborates the prosecutrix.

It is not for us to determine, nor do we intend to give you any direction in respect to the force or strength of this testimony, for you will understand, as well as we, and better too, the proper inference to be drawn from it. You will say what impression this evidence makes upon your minds as corroborating Mary upon the question of a promise of marriage.

Again, this same evidence is competent upon another question — that of seduction, and illicit intercourse. Mrs. Chissom testifies that he was there frequently, and that they occupied the parlor, and were generally alone. She puts them in a position where an act of this kind could be done; and you will say what inference you draw from this testimony, and whether it corroborates Mary upon the point as to being seduced by, and having illicit intercourse with, the defendant.

Right here, it is claimed, on the part of the defendant, that Mrs. Chissom is not entitled to credit; and, in order to impeach her, eight witnesses have sworn in respect to her character in that neighborhood, some of whom say it is not good; others, that it is bad. I think the farthest any of them state in respect to her character for truth is, that they would hate to say that they would not believe her under oath.

On the other hand the People have introduced eight witnesses who have sworn as to her character, all swearing they would believe her under oath. The question of credibility is with you. Her appearance on the stand, the probability of the story she tells, and this proof tending to impeach her charac-

ter, offered by the defendant, as well as the proof to sustain her, all is competent, all proper to be submitted to you upon the question of credibility; and you will say, upon this whole evidence — her story, its probability, and the evidence introduced on the part of the defendant, and on the part of the People, and her appearance upon the stand, whether she is entitled to your credit. If she is not entitled to your credit, then Mary stands uncorroborated, and there can be no conviction.

Another question to be considered, involves the credit of the prosecutrix as a witness upon the stand. It is conceded here, on the part of the People, that there were some discrepancies in some parts of her testimony. For instance: that she did not go upon Flat street with Bennett; and in another respect: she testifies that she did not go out of the church at a certain time; and Bennett in that respect contradicts her. You will say whether, if at all, this shakes her credibility. Her appearance upon the stand, and her testimony, are before you, and you have a right to judge of her credit, and you will say, therefore, whether she, as a witness, is fully entitled to your credit; and if not fully, to what extent. The question of credibility is entirely with you.

It is claimed on the part of the defendant, that no conviction can be had unless Mary is corroborated, not only in respect to a promise of marriage and seduction, but also that she must be corroborated as to being an unmarried female, and having been of previous chaste character. We advise and instruct you that, in respect to her being an unmarried female, she needs no corroboration. The prosecutrix testifies to her chastity, and if entitled to credit, this is sufficient, and she need not be corroborated as to chastity.

The statute, evidently, was drawn with care, hence it requires that the prosecutrix shall be supported, in respect to the material points; but whether this extends to any other points than the promise of marriage and seduction, has been made a question. Seductions generally take place when the parties are alone, and the legislature, in order to guard parties

from false charges, required that the female making such charges should be supported by other evidence.

It is important, and necessary to a conviction, that she be an unmarried female, but having testified to it herself, it is not necessary, as before remarked, that she should be corroborated on that point. Were she a married female, this would be matter of defense, and could be taken advantage of by the defendant.

We come now to speak of a question vital to this issue: Upon the whole evidence, was Mary, the prosecutrix, prior to this alleged seduction, a person of chaste character? This is a vital question, because, if the defendant has shown, or if it appears from the whole proof, to your satisfaction, that, prior to the time alleged, she was a person of unchaste character, then she is not entitled to the protection of the statute. A person claiming the protection of this statute must be of chaste character; and, that we may have the definition of the word " chaste," I read its definition, as given by Webster: 1. "Pure, free from unlawful commerce, undefiled; applied to married persons, true to the marriage bed." 2. "Free from obscenity." This is the definition of "chastity," and we think it is a proper one to be applied to this word, as used in the statute. The question recurs: Is the prosecutrix a person of chaste character? Did she, prior to the time alleged, possess a chaste character?

Upon this point there has been a good deal of testimony introduced by the defendant. As we before remarked, we are not going to detail it to you; it is fresh in your minds. You will carefully examine the whole evidence bearing upon this question, and say whether she was a person of chaste character.

"Character," as has been defined by the courts (and we think properly), means "personal virtue;" but it is not necessary that the defendant should prove before you actual connection with any person, in order to establish her want of chaste character. It is sufficient if he prove such a state of facts as will warrant you in the inference that she is not a chaste character.

The defendant has proved certain specific acts which he claims are unchaste, and asks you, from these acts, to say by your verdict, that the prosecutrix was not of chaste character previous to the alleged commission of this offense. These acts are fresh in your minds, and we need not refer to them. It is sufficient for us to say that they do bear upon the question of chastity, but to what extent it is not our province to decide. This is a question purely for your consideration. It is for you to say whether this evidence is of that character and that force that your minds are led to the conviction that she was a lewd person, or of unchaste character.

Gentlemen, you are practical men, and you are, I think, capable of weighing the force and effect of this testimony, and will therefore give it that force and effect which properly belongs to it.

In conclusion, we need scarcely add that this is an important case. It is the first one tried in this county. It is important to the defendant; it is important to the People; and as you retire to your room for deliberation, you will not allow those deliberations to be influenced by any considerations of sympathy. This case (as I doubt not it will be), should be decided upon the evidence as it appears in the case, as it has been detailed before you, and not by sympathy for the prosecutrix or the defendant. If he is guilty of the offense charged, then, gentlemen, it will be your duty to convict him. But you will not convict unless you are satisfied beyond reasonable doubt upon all the points which we have presented to you; and if you are thus satisfied, your duty, though unpleasant and painful, is nevertheless imperative.

As we have stated, this is an important case. Indeed it is a sad one. We hope your verdict will vindicate the right of the case, wherever it may be found. We submit the case to you.

At the request of the defendant's counsel, we further charge you that the evidence as to Bennett's calling on the prosecutrix should be taken into consideration, as bearing upon the question as to the defendant being a suitor, and upon the

alleged promise of marriage; and you will say whether or not it repels the claim as to whether he was a suitor, or there was a promise of marriage.

The counsel for the defendant excepted to so much of the charge which is as follows:

" If you shall be fully satisfied from the evidence that the defendant promised to marry the prosecutrix if she would have carnal connection with him, and she, believing and confiding in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute."

The counsel for the defendant also excepted to so much of said charge which is as follows:

" If you find from her evidence that it complies with the definition we have given you — in other words, if the defendant promised to marry her if she would submit to have carnal and illicit intercourse with him, and she believing such promise to have been made in good faith, and on her part intending to accept such offer of marriage, and then yielded — we say that such a promise is sufficient to bring the prosecutrix within the protection of the statute."

.The defendant's counsel also excepted to so much of said charge as follows:

" We advise and instruct you that, in respect to her being an unmarried female, she needs no corroboration. The prosecutrix testifies to her chastity, and if entitled to credit, this is sufficient, and she need not be corroborated as to chastity."

The defendant's counsel also excepted to so much of said charge which is as follows:

" It is important and necessary to a conviction that she be an unmarried female; but having testified to it herself, it is not necessary, as before remarked, that she should be corroborated on that point. Were she a married female, this would be a defense."

The counsel for the defendant then asked the court to charge the jury, that, to warrant a conviction, the witness, Mary Chissom, must be supported and corroborated by other

evidence. (1.) In regard to the promise of marriage made by the defendant. (2.) To the seduction. (3.) To the illicit connection. (4.) That she was unmarried. (5.) That she was of previous chaste character. The court refused so to charge the jury, any further than they had previously charged.

To which decision the counsel for the defendant excepted

The counsel for the defendant also requested the court to charge the jury, that, to warrant a conviction, the jury must find that there was a legal and binding promise of marriage before the seduction took place.

The court refused, any further than they had previously charged.

To which refusal of the court the counsel for the defendant excepted.

The counsel for the defendant further requested the court to charge, that if the jury should find that the promise of marriage made by the defendant was dependent upon the fact that the witness, Mary Chissom, would have connection with the defendant, and that the promise was not complete until such connection did actually take place, then in such case the defendant could not legally be convicted of the offense charged in the indictment.

The court refused, stating that they should not change their charge made in respect to the subject, and the counsel for the defendant excepted.

The counsel for the defendant further requested the court to charge the jury, that the fact of the defendant and Mary being in the parlor together, without showing them in improper situations, or his taking any improper liberties with her at any time, is not corroborative evidence of the seduction and illicit intercourse, within the meaning and intent of the statute.

To charge which the court refused, and the counsel for the defendant excepted.

The jury found the defendant "guilty," and a bill of exceptions having been made, the record was removed into this court for review by *certiorari*.

*A. V. Harpending,* for the defendant.

I. The defendant was indicted at the Yates Oyer and Termi-
ner, in March, 1861, under "an act to punish seduction as a
crime" (*ch.* 111, *Láws of* 1848, *p.* 148), and convicted at the
Yates County Sessions in November last. The following is a
copy of the act:

"Any man who shall, under promise of marriage, seduce
and have illicit connection with any unmarried female of pre-
vious chaste character, shall be guilty of a misdemeanor, and,
upon conviction, shall be punished by imprisonment in a State
prison not exceeding five years, or by imprisonment in a county
jail not exceeding one year; provided that no conviction
shall be had under the provisions of this act, on the testimony
of the female seduced, unsupported by other evidence, nor
unless indictment shall be found within two years after the
commission of the offense; and provided further, that the sub-
sequent marriage of the parties may be pleaded in bar of a
conviction." (*Laws of* 1848, *p.* 148.)

Under this statute the word "man," we think, must mean
an adult of twenty-one years. It certainly cannot mean an
infant nor a mere boy or youth. It seems to be used in con-
tradistinction from either of those. He must be a *man,* capable
in law of making a legal and binding promise of marriage,
and such an one that the promisee could maintain an action at
law upon. Not an infant of sufficient age to lisp out the
promise, but a man whom the law declares of sufficient age to
make a contract. This view is strengthened by the words,
"*promise of marriage,*" meaning a contract binding in law
between the promisor and promisee, and one for the breach of
which on either side an action could be maintained at law. No
civil action could be maintained by the prosecutrix in this
case against the defendant for a breach of promise of marriage,
provided the defendant was, at the time of making such pro-
mise, an infant under the age of twenty-one. (5 *Cow. R.,* 175.)
It is true that in such a case the *onus* of proof would be on
the defendant to show infancy; but in this case that *onus* of
proof has been changed by the statute, and hence the People

The People *v.* Kenyon.

must show that the defendant was a man of the age of twenty-one. No such proof was given in this case.

II. It is also plain that it must be a legal and binding contract, and in order to be so it must be mutual, otherwise it would be a mere *nudum pactum*. In this case there was no such contract or promise proven. The prosecutrix did not promise or agree on her part to marry the defendant. "He said if I would do so and so he would marry me" (meaning to have sexual intercourse with me). "I told him, no, sir. He had sexual intercourse with me after this conversation." "I don't remember whether there was anything said by me as to my being willing to marry him."

This is the substance of all the evidence given upon this subject, and fails to show such a promise of marriage as the law contemplates. It wants mutuality. She does not agree to marry him, but expressly refuses. The defendant could not maintain an action against the prosecutrix upon these facts for a breach of promise of marriage, were she of age and refused to fulfill. Seduction and illicit connection is not a crime by this act, unless it takes place "*under promise of marriage;*" meaning that before and at the time of the seduction and illicit connection there must be a binding and *subsisting* promise of marriage; otherwise the intercourse could not take place under promise of marriage.

The spirit of mutuality must be breathed into it, and it must become a living contract before the seduction and illicit connection take place, or it is no crime; and so the judge held in the well considered opinion of the *People* v. *Alger* (1 *Park. Cr. R.*, 323). (*Newcomb* v. *Clark*, 1 *Denio*, 226, 228, 229.)

III. Again, the promise of marriage in this case on the part of the defendant was made to depend upon the fact that illicit intercourse should take place. "He said, if I would do so and so he would marry me." The condition precedent was, that she should have sexual intercourse with him. No action could be maintained by the prosecutrix against the defendant for the breach of such a promise, without showing a compliance upon her part with the condition precedent. The promise of mar-

riage does not become complete until illicit connection takes place. It cannot be said, therefore, that "seduction and illicit connection" take place "*under promise of marriage*," when such intercourse must take place before and in order to complete the promise. Hence the court erred in his charge to the jury.

IV. Again, the promise of marriage proven in this case was not binding upon the defendant in any view whatever, not even after illicit connection had taken place between the parties, and no action could have been maintained by the prosecutrix against the defendant thereon for a breach thereof, because the same was in contravention of good morals. (5 *Cow.*, 253; 4 *Denio*, 439; 13 *Barb.*, 92.)

Again, suppose the defendant had promised the prosecutrix to pay her fifty dollars if she would have carnal connection with him, and she believing and confiding in such promise, and intending on her part to accept such offer, and then yielded, would it be such a promise in law as the prosecutrix could maintain an action upon against the defendant for the fifty dollars? Clearly not, and as everybody, "females as well as males, are presumed to know the law." (1 *Park. Cr. R.*, 337.) Hence the prosecutrix and the defendant both knew that such a promise as he made was not binding in law, and, therefore, the illicit connection took place without any legal or valid promise of marriage whatever. It is finally settled in England that even a promise made in consideration of past illicit intercourse is void for want of consideration. (*Beaumont* v. *Reeve*, 8 *Ad. & Ell. N. S.*, 483.)

V. The court erred in rejecting the offer, made by the defendant, to prove that the character of the prosecutrix for chastity was bad by general reputation, and the charge thereon.

If the legislature had intended personal purity only, they would have used the words "*previously chaste*," instead of "previous chaste character." By the use of the word "*character*," was intended and meant the character which the female had formed in the community in which she lived, *for chastity*.

I have always understood the rule of evidence to be in such

a case as this, and in the kindred cases of rape, seduction, breach of promise of marriage, &c., where chastity was in issue, a want of it could be proven by general reputation, and could not be by specific acts. (*Greenl. Ev., vol.* 1, § 54; *Id., vol.* 3, § 214; *Safford* v. *The People,* 1 *Park. Cr. R.,* 474, 479; *Bouvier's Law Dict., vol.* 1, *p.* 221, "*Character;*" *People* v. *Jackson,* 3 *Park. Cr. R.,* 391; *Greenl. Ev., vol.* 2, § 577 [2]; 1 *Burrill's Law Dict.,* 277, "*Character;*" 3 *Serg. & Rawle,* 337, 338; 26 *Vermont R.,* 279.) And hence we say that the legislature did not intend to change, by this provision, this salutary rule of evidence.

VI. The court erred in rejecting the offer, made by the defendant, to prove, from general reputation, that the witness, Eliza Chissom, with whom the prosecutrix resided, kept a house of ill fame. Because it was a fact tending to show not only a want of personal purity in the prosecutrix, but to repel the idea that she could live for year after year in a house of ill fame, associating with the lascivious, and yet remain chaste and pure.

VII. The prosecutrix must be supported by other evidence as to all the material facts constituting the crime. 1st. As to the promise of marriage. 2d. As to the seduction; that is, the use of arts other than the promise. 3d. As to the illicit connection. 4th. As to her being unmarried; and 5th. As to her previous chaste character. (1 *Park. Cr. R.,* 478.)

This appears from the language of the act, which is, "Provided no conviction shall be had, *under the provisions of this act,* on the testimony of the female seduced, unsupported by other evidence," meaning that she must be supported by "other evidence" as to all of the above material facts, which together constitute the crime; if any one of these is wanting, or she is not supported as to all, "no conviction shall be had *under the provisions of this act.*" The prosecutrix was wholly unsupported by other evidence as to any of these material facts. The only supporting proof offered by the People was by the witness, Eliza Chissom, the mother of the prosecutrix, and was only as to the cold and formal attentions of the defendant. No

asking of consent, no preparation for marriage, and none of the thousand little incidents or circumstances denoting such intention or affection, and none from which a promise of marriage could be presumed. The court, therefore, erred in refusing to direct an acquittal on the close of the People's proof, on the grounds and for the reasons stated, and also erred in the charge to the jury.

VIII. No conviction can be had under this indictment, because the promise proved in this case, if there is any, is conditional. The promise alleged in the indictment is absolute and unconditional, and hence there is a variance. (*The People* v. *Alger*, 1 *Park. Cr. R.*, 337; *Conrad* v. *Williams*, 6 *Hill R.*, 444.)

No conviction can be had under the second count, because the promise therein alleged is, that he would marry when requested, and there is no proof of such a promise.

No conviction can be had under the first count, because no mutual promise of marriage is alleged. (1 *Park. Cr. R.*, 334.)

IX. The indictment alleges the commission of the crime on the second day of May, 1860. Time, under this statute, is material, and therefore must be proved as alleged. Hence a variance.

*H. M. Stewart* (District Attorney), for the People.

I. The indictment charges the offense in the words of the statute, and contains every allegation as required by the statute, and that is sufficient. (1 *Park. Cr. R.*, 454, *and cases there cited.*)

It was not necessary to allege or prove that the defendant was unmarried, or to prove a valid contract of marriage. This is hereafter considered under Point IV.

It is alleged in the first and second counts that the defendant is a *man*, but that was unnecessary; it would have been sufficient to charge him by a name designating one of the male sex. Age and mental capacity sufficient to commit crime are always presumed, and are matters not of allegation, but of

defense. (1 *Russ. on Cr.*, 1–25.) Facts which are matters of defense need not be alleged. (1 *Chit. Cr. Law*, 191.)

The second count alleges mutual promises to marry, which was unnecessary (see Point IV), and also states that Mary Chissom was of a marriageable age and condition.

II. None of the objections to evidence and exceptions taken on the part of the defendant were well taken. The materiality and competency of the proof as to the character of the defendant's visits, and that he was her only suitor, is apparent. It goes directly to the promise of marriage, and sustains the witness in her evidence as to an actual promise.

Time is only material when it is made so in the statute, and enters into the nature of the offense. (See Point III.)

The influence the promise had upon her mind, by way of inducing her to consent, was of the very *gist* of the offense. The intercourse must be obtained " under " the promise. In an indictment for obtaining property by false pretenses, it is proper for the prosecutor to state, as a witness, what influence the representations or pretenses had upon his mind by way of inducing him to part with his property. (*The People* v. *Miller*, 2 *Park. Cr. R.*, 197.) The statutes are identical in regard to this principle. (2 *R. S.*, 861, § 53.)

The evidence as to who was the father of the child, was clearly competent and proper. The witness had just stated, without objection, that she was a mother. The evidence goes directly to the fact of exclusive intercourse with the defendant, and it is important as fixing the time of the intercourse itself. It also shows a motive for the flight and absence of the defendant, as proved, and characterizes it as an evidence of guilt.

Whether Mary had had intercourse with any person other than the defendant has direct bearing upon her previous chaste character, and goes, also, in connection with her other evidence, to prove the intercourse with the defendant.

Proof of the visits after the intercourse, is competent and proper. The defendant in these visits requested Mary to keep

her situation a secret, not to tell her mother, and agreed to fulfill his promise after a short visit to Rhode Island.

These visits are a continuation of those previous to the intercourse, with knowledge of Mary's situation, and they characterize his flight from and continued absence from the county of Yates, from November, 1860, to July, 1861, as an evidence of guilt. They show an effort to conceal the offense and flee from justice.

An offer was made to prove that Mary's general reputation, among her neighbors, for chastity, was bad.

This evidence was properly excluded. Character, as used in the statute and in the kindred statute punishing abduction, means "actual personal virtue," and not reputation ; *personal qualities* which make up the *real character*, and not *public reputation*, which is the *estimate* of character formed by the public. To substitute reputation for character, in this its primary and true sense, would leave any pure and virtuous female, whose reputation had been injured by falsehood and slander, without the protection of the statute. (2 *R. S.*, 4*th ed.*, 850, § 27 ; *Carpenter* v. *The People*, 8 *Barb. S. C. R.*, 603 ; *Crozier* v. *The People*, 1 *Park. Cr. R.*, 454.)

Under these decisions it would be improper for the People to prove "chaste character" by general reputation, for that would only prove the *public estimate* of character, and not the fact itself.

The last cited case lays down the rule correctly and soundly, viz., that chastity is the general law of society, and, like good character, is to be presumed, and that such presumption may be met by specific acts of lewdness proved on the part of the defendant, and can be met in no other manner. (1 *Park. Cr. R.*, 454.) To allow hearsay evidence on this point would enable the seducer, covertly and secretly, to blast the reputation of his intended victim, and then go on to the attainment of his object with impunity.

Again, if chaste character is "personal virtue," then "unchaste character" is personal impurity, a specific fact, capable of direct proof from witnesses speaking from their own know-

The People *v.* Kenyon.

ledge.   In such case, reputation, which is hearsay evidence, is inadmissible.  (1 *Phil. Ev.*, 229, *and Cow. & Hill's Notes, p.* 559, *note* 432.)   Evidence of specific acts, and of conduct, is better and higher evidence, and excludes hearsay.

The defendant offered to prove, from general reputation among her neighbors, that the house of Eliza Chissom, with whom Mary lived, was a house of ill fame.

How such proof could have resulted had it been admitted, may be inferred, perhaps, from the fact stated in the charge that eight of her neighbors testified that Mrs. Eliza Chissom was a person of good character.   But the evidence was clearly incompetent.

1. Reputation or hearsay evidence is incompetent to establish any specific fact which is, in its nature, susceptible of being proved by witnesses who speak from their own knowledge. (1 *Phil. Ev.*, 229 ; *Cow. & Hill's Notes, p.* 559, *note* 432.)   That a house is disorderly is to be proven by particular facts. (1 *Russ. on Cr.*, 825.)   A house cannot be proved to be disorderly by common reputation. (*Cow. & Hill's Notes*, 562, *citing* 1 *Serg. & Rawle*, 342, 345.)   The fact is susceptible of better proof than hearsay, such as the harboring persons of unchaste character, and that the house is permitted to be a common resort of disorderly persons.

2. Evidence that Eliza Chissom's house was a disorderly one would not necessarily affect the character of Mary for chastity, as she was a minor, residing with her mother.

III. Exception taken on motion to discharge defendant at the close of the People's proofs.

All the questions raised upon this motion are hereafter considered, in argument on the exceptions to the charge and requests to charge, except the 3d ground, viz., that the *time* of committing the offense alleged in the indictment had not been proved. To this I answer:

1. It is never necessary to prove the offense committed at the precise time alleged, unless time enters into the nature of the offense, as in burglary and arson. (*Barb. Cr. L.*, 397 ; 1 *Chit. Cr. L.*, 184, 185.)

The offense is laid in the indictment to have been committed within two years before indictment found; and the offense is proved to have been committed within that time.

It was not necessary to prove affirmatively that the defendant was a man. It is presumed that the defendant was old enough to commit the offense, and it remained for the defendant to prove that he was not.

2. The defendant's manhood was sufficiently proved.

(1.) The defendant, it is presumed, was personally present and under the inspection of the jury.

(2.) It was proved that he went into society and to social parties, labored on a farm, went a long journey, and became a father.

IV. There is no error in the charge.

It is not necessary that the promise should be a legal, valid or binding promise between the parties. It is sufficient that a promise is made, which is a consideration for or inducement to the intercourse. (*Crozier* v. *The People*, 1 *Park. Cr. R.*, 454.)

1. The term "seduce" is defined as follows: "To draw or lead apart, or away, out of the way or path; to withdraw, to allure, to entice, to mislead." (*Richardson Dic.*, *Tit.* "*Seduce.*") "To draw aside or entice from the path of rectitude and duty in any manner, by flattery, promises, bribes or otherwise; to tempt and lead to iniquity; to corrupt, to deprave." *Id.* To entice to a surrender of chastity. (*Webster's Dic.*, *Title*, "*Seduce.*")

The statute clearly contemplates that the promise is a wile, a lure and enticement, fraudulent and criminal in its design. This would invalidate its obligation by the civil law, and no male suitor could enforce any civil rights on a promise of this nature.

Crime is a *public wrong*, and is punishable as such even when the acts of the offender are invalid under the civil law. Forging the notes of a bank which has no existence is forgery. (*People* v. *Peabody*, 25 *Wend.*, 472.) It is sufficient that the paper counterfeited, be not *illegal* in its very frame and be of the semblance of that counterfeited. (2 *Russ. on Cr.*, 344.)

That a party whose name is forged to paper, has no legal capacity to make it, is no defense. (4 *Park. Cr. R.*, 217.)

The case of the *People* v. *Alger* (1 *Park. Cr. R.*, 333), does not hold or establish any different rule. All that was decided was, that the special plea, viz., "that the defendant was, at the time of the seduction, a married man, having a family, which fact was well known to the female," was good. The learned judge there concedes that *if* the female seduced be ignorant of the fact that the accused is a married man, the case is within the act.

A civil action will lie on the promise of a married man, if the fact of the marriage be unknown to the female (*Milward* v. *Settlewood*, 1 *Eng. Law & Eq..Rep.*, 408), and infancy would be no defense to an indictment under this statute (1 *Park. Cr. R.*, 454), although it would be in a civil suit for a breach of promise of marriage. (5 *Cow. R.*, 475, *cited by Mr. Justice* PARKER.)

2. The charge is strictly correct, even if the statute requires the promise to be a valid one. A mutual promise on the part of the female seduced is implied, if she yields to the solicitations of the seducer, made under his promise to marry. ) 1 *Park. Cr. R.*, 456.)

The third and fourth exceptions to the charge are not well taken.

1. The statute does not contemplate that the female shall be supported or corroborated upon every material fact alleged. It is simply a question of *credibility*, and it is only required, as in the case of an accomplice, that the "support" should extend to some fact or facts which go to prove the offense charged. (2 *Russ. on Cr.*, 963.) In this view, the whole question is with the jury.

2. The support, or corroboration, is, at all events, only necessary to those points which constitute the offense, viz., the promise and intercourse, and is not necessary as to those points which merely indicate the person to be protected, viz., that she was unmarried and of previous chaste character. Chaste character means "personal purity" (8 *Barb. S. C. Rep.*, 603;

1 *Park. Cr. R.*, 454), and, like good character, is to be presumed; and as no affirmative testimony is necessary, no support is necessary.

Again: That the female is "*unmarried*" is a fact negative in its character, and not within the positive knowledge of any person but herself, while marriage is a fact susceptible of positive proof. The principles on which rules of evidence are founded require, then, that the evidence of the female seduced that she was unmarried should be deemed sufficient without support, and it should be left to the defense to controvert it if they can; and the same rule applies in regard to chastity of character.

3. The promise and the intercourse are the only facts which occur in secrecy and seclusion, and there is no good reason why the female should be supported as to the others, which are open, patent and as easily susceptible of proof as any fact in any other case.

In the case of *Safford* v. *The People* (1 *Park. Cr. R.*, 474), HAND, J., says: "But the facts *constituting the crime* cannot be proved by the seduced alone; she must be supported by direct evidence or proof of circumstances on all the material allegations of the indictment. However, no point seems to have been taken on the trial on this branch of the case."

Fifth exception to the charge.

It was competent and sufficient to support the witness by circumstantial proof; so expressly ruled in the case of *Crozier* v. *The People* (1 *Park. Cr. R.*, 453), and admitted by HAND in the case above cited. Circumstances are usually all the proof allowable in such cases.

4. The first and second requests to charge have been above considered.

5. As to the third request to charge, it was sufficient that the promise preceded the intercourse, and was the inducement to it. (1 *Park. Cr. R.*, 454.)

6. Fourth request to charge.

Evidence of circumstances was proper and competent — the

weight and force of the evidence was with the jury, and was fairly submitted to them.

7. The fifth request to charge was a request that the court should decide questions, not of law, but of facts, and give their opinion upon their relative weight and importance.

*By the Court*, CAMPBELL, J. The prisoner, Edgar Kenyon, was indicted at the Yates County Oyer and Terminer, and afterwards tried at the Sessions in that county, and found guilty of the seduction, under promise of marriage, of one Mary Chissom, a young unmarried female, of sixteen years of age. He was indicted under an act passed by the legislature of this State in 1848, and entitled "An act to punish seduction as a crime." There was an act passed in England, as far back as the reign of Henry VII, which made the forcible abduction and marriage or defilement of a woman a crime, provided the woman was an heiress. That statute declared that any person should be deemed and punished as a felon who, for *lucre*, should take any woman, contrary to her will, and be married to her or defile her. If the first taking was against her will, it was still felony even if the subsequent marriage or defilement was with her consent. Still, the filthy *lucre* was the ground of offense. There could be no conviction unless, in addition to the woman, there was money in the case. It must appear that she had real or personal estate, or was an heir apparent.

Our statute was enacted for a higher and nobler purpose; not to prevent or to punish simply what was known commonly as the "stealing of an heiress," but, under threatened punishment, to prevent men from stealing from young and confiding women, under the solemn promise of marriage, that which is often dearer to them than their money or even their life—their personal chastity. Hence, all that the act requires is that she shall be unmarried and of a "previous chaste character." What, then, is meant by the expression, "a previous chaste character?" I answer, in the language of this court in this district, as expressed by Judge WELLES, in *Carpenter* v. *The People* (8 *Barb.*):

"We think the words referred to do mean actual personal virtue; that the female must be actually chaste and pure in conduct and principle, up to the time of the commission of the offense." That case arose under another statute—a statute enacted for the punishment of those who abducted or seduced away females for the purpose of prostitution. It was enacted by the same legislature, and was emphatically a kindred statute. The precise phrase is used in both acts, and, manifestly, what is a correct interpretation of the expression in one act, would also be in the other. But that construction was approved in the 3d district, in the case of *Crozier* v. *The People* (*reported in* 1 *Park. Cr. R.*, 453)—a case which arose under the statute which we are considering, and for violating which the prisoner was indicted and convicted. Then, following the language of Judge PARKER, in the latter case, I should say with him, expressing the views of the court in that district, "Chastity is the general law of society. A want of chastity is the exception. It could only be impeached by showing acts of illicit intercourse." It follows, that the offer on the part of the defendant to prove that the character of the witness and prosecutrix, Mary Chissom, for chastity, was, by general reputation, bad, was properly excluded. The question was, not what her reputation for chastity was, but what was her real, her actual character. Was she, in truth and in fact, a virtuous and chaste woman, or was she lewd and unchaste? She had testified to her acquaintance with the defendant; his attention and courtship; his promise of marriage; the illicit intercourse with him; that no other person had addressed her as a suitor; that she was unmarried, and that she had never had sexual intercourse with any person other than the defendant, the prisoner at the bar. It was competent for the defendant to show, if he could, that she was unchaste, and that others beside himself had had illicit intercourse with her. He called his and her companions, and by the testimony of Stephen Bennett and others sought to show that she was lascivious, but failed to satisfy the jury that she was not, in the language of the statute, of "previous chaste character." I am inclined to think that the testimony given

by Bennett of his attempts upon her virtue, and of her resistance, would tend to satisfy the jury that she fell only when an avowed suitor offered his hand and made the sacred promise of marriage. But be that as it may, it is very clear to my mind that it was not by general reputation, but only by specific acts, that he could impeach her character for chastity. The offer was made, both in reference to her being a witness as well as prosecutrix. If the offer had been made as to both in distinct propositions, it still would have been rightly rejected.

It was expressly held in the late Court of Errors, in *Bakeman* v. *Rose and wife* (18 *Wend. R.*, 146), that evidence of general reputation that a female witness was a prostitute was inadmissible for the purpose of impeaching the witness. So, too, the offer to prove that from general reputation the house where Eliza Chissom lived, and who was the mother of Mary, and with whom Mary lived, was a house of ill fame, was properly rejected and the evidence excluded. If true, it was a fact which could be proved by specific acts also. The general rule undoubtedly is, that hearsay evidence is incompetent to establish any specific fact which is in its nature susceptible of being proved by witnesses who speak from their own knowledge. If this house was the home of lewd women, and the resort of unprincipled men, and was in truth a house of prostitution, it would very evidently have been in the power of the defendant, who was a frequent visitor there, to have made proof of specific facts tending to show its real character; but he could not show it by general reputation. (*See note to* 1 *Phil. Ev.*, *Cow. & Hill's Notes*, note 432.)

I have thus considered one of the provisions of the act — that which requires the female to be of chaste character, as it became necessary to do so in connection with the offer of proof made by the defendant. But the objections made and exceptions taken by the defendant on the trial, were so numerous, and directed to every provision of the statute, that it becomes necessary to refer to them all somewhat in detail. Referring, then, again to the language of the act, "Any man who shall, under promise of marriage, seduce and have illicit connection

with any unmarried female of previous chaste character, shall be guilty of a misdemeanor," &c., "provided that no conviction shall be had under the provisions of this act on the testimony of the female seduced, unsupported by other *evidence*." It may be well to bear in mind that there is a marked difference between testimony and *evidence*. The latter is much more comprehensive than the former — testimony being the statements or the declarations of a witness, and evidence being rather the result or deduction from all the facts established, whether by testimony, by events or by circumstances, by writings, records or other memorials. It is called evidence, saith Coke, because thereby the point in issue in a cause to be tried is to be made evident to the jury, and the evidence to a jury containeth testimony of witnesses and all other proofs to be given and produced to a jury for the finding of any issue joined between parties. (*See Jacobs' Law Dictionary, Title,* " *Evidence.*")

Now, in the act we are considering, the testimony of the female seduced must be supported by other evidence. Not necessarily the testimony of another witness, as in our statute relating to the crime of treason, where it is required that there shall be the testimony of two lawful witnesses to the same overt act, but other evidence besides the testimony of her upon whom the wrong was inflicted. Proceeding, then, with the provisions of this act, the first of which is, that " any man who shall," &c. Even upon this phrase the defendant raised the question of the sufficiency of the proof to convict, as it did not appear by any proof that he was a *man*. He was in court, present before the jury, and not sued upon a promise to marry, but charged with a crime. If he was old enough to be, and was, the father of the child begotten upon the body of the prosecutrix, under a promise of marriage, I apprehend there can be no doubt that he was a man within the meaning of the statute, and old enough to be punished for the crime. This objection can hardly require any serious discussion.

The female seduced must be an unmarried female. In her testimony in this case, she states distinctly and positively that

The People *v.* Kenyon.

she was unmarried. Is it necessary that in this she should be supported? I think not. On the contrary, if the female were married, in almost every case it would be a fact capable of direct proof. But, in the case before us, the female is supported. It appears by evidence other than her testimony, that she was 'a young woman — perhaps a better expression would be, a girl — living at home with her mother, scarcely fifteen years of age when the defendant commenced visiting her, and that she was born and had always resided in the same neighborhood. It appears that, on the trial, there must have been present many of her companions, those who would have known if she had been married. The People could not well prove a negative, that is, that she was not married, except by her own testimony. From her testimony and all the surrounding circumstances, was it not evident to the jury that she was an unmarried female? Again, the seduction must be effected under a promise of marriage, and the defendant contends that that promise must be mutual. Conceding this, we may still inquire what is meant by mutual promises to marry. If a man, having paid his addresses to a woman, makes to her an offer of marriage, that is, simply offers to marry her, and she says in reply that she accepts his offer, would not the law imply the promises? In this case, the testimony of the prosecutrix is that the defendant said to her, if she would do so and so, he would marry her, that is, if she would have connection with him. At first she said no, sir; but afterward she assented. In other words, she accepted his offer of marriage. That she so understood it, is evident from her answer to the question as to what influence the promise of marriage had upon her by way of inducement to her to consent to the intercourse. She says: "I thought he was going to have me, and nobody would know it." If he was to have her, she must have understood that she was to marry him. As to the support by other evidence, it appears that the defendant was a frequent visitor at her mother's house, that he waited on her to balls and parties, and took her out frequently to ride, and when the mother spoke to him about keeping company with

her daughter, he said his motives were good. Surely there was evidence tending to show to the jury that there may well have been a promise of marriage. The mother may have well supposed, from his declarations, that his motives were good; that he was addressing her daughter with honorable intentions, and with a view to marriage.

As to the illicit connection, the fact stands out that the prosecutrix was delivered of a child, and the whole case shows evidence on both sides that there was abundant opportunity for the defendant to have become the father of it, if there were such promises as she has sworn to. The act under which the defendant was convicted does not require that the female shall be supported in every particular, nor even in every important particular. The language is, "unsupported by other evidence." Undoubtedly, in the main features of the case, as to the important points, she should be supported. How direct and how positive and conclusive the supporting evidence should be, is quite another question. In administering such a law, I apprehend no precise rule can be laid down. Each case will be governed, in a great measure, by its own particular circumstances. I have gone carefully over this case. The charge of the county judge was able and elaborate, and, I think, entirely fair and impartial. I do not think, in his charge, or in his refusal to charge, he committed any error in the admission or rejection of evidence.

In my judgment, there is no sufficient ground for a new trial.

Conviction affirmed.